IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MIM CONSTRUCTION, INC.
:
   v.     :    Civil Action No. DKC 19-1106
:
FREDERICK COUNTY
:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this procurement case, brought under 42 U.S.C. § 1981 for intentional discrimination, is the motion to dismiss filed by Defendant Frederick County, Maryland ("the County" or "Defendant"). (ECF No. 10). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted.

**I. Background**

MIM Construction, Inc. ("MIM" or "Plaintiff") is a construction company, specializing in paving and sitework services.[1] MIM is a certified Minority Business Enterprise ("MBE"). MIM's majority owner is Edward Cofield. Mr. Cofield is an African American male. The County "has a significant

---

[1] Unless otherwise noted, the facts outlined here are undisputed and construed in the light most favorable to Plaintiff.

Caucasian majority." (ECF No. 1, ¶ 7). "Recent articles. . . indicate perceptions of racial discrimination or intolerance" in the County. (*Id.*).

In September 2018, the County solicited bids for construction work on multiple project sites. "The work at each site involved the repair of damaged concrete and the installation of new asphalt" and "would require several months to complete." (ECF No. 1, ¶¶ 8-9).

On September 18, 2018, the County opened the bids. "The opening of the bids revealed that MIM had submitted the lowest bid[.]" (ECF No. 1, ¶ 11). On September 21, 2018, the County attempted to deny an award for the solicitation to MIM because MIM had not signed its bid bond. Mr. Cofield met with the County to try to win the contract award. After the meeting, "MIM formally protested the award to any entity other than [it]." (*Id.*, ¶ 14).

On October 18, 2018, the County canceled the solicitation and rejected all bids received. The County explained that "[d]ue to the nature of the work specified in the invitation for bid, it is not feasible that all work can be completed before end of calendar year." (ECF No. 1-1, at 2). On December 11, 2018, the County entered into a no-bid purchase order with RFP,

Inc. ("RFP"). RFP is a non-minority owned construction firm.[2] RFP completed less than half of the work in 2018.

On January 8, 2019, Wendy S. Kearney, a Senior Assistant County Attorney, e-mailed MIM's counsel explaining the decision "to 'reject all bids' and proceed to complete the work using an 'on call' vendor." (ECF No. 1-3). Ms. Kearney noted this decision was made "due to time constraints, particularly the need to have the work completed by year end," and "that it was also financially advantageous for the County to proceed in this manner." (*Id.*).

On April 12, 2019, MIM filed a complaint against the County and asserted one claim: race discrimination in violation of 42 U.S.C. § 1981. (ECF No. 1). On May 13, 2019, the County filed the presently pending motion to dismiss. (ECF No. 10). MIM responded, (ECF No. 11), and the County replied, (ECF No. 12).

**II. Standard of Review**

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual

---

[2] The County does not contest this allegation but notes that the complaint "is silent as to how [MIM] knows [RFP] is a 'non-minority owned' entity." (ECF No. 10-1, at 5 n.3).

3

allegations are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

In reviewing a motion to dismiss, the court may "consider documents attached to the complaint, *see* Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). MIM attached the following to its complaint: (1) the County's letter rejecting all bids (ECF No. 1-1); (2) the County's purchase order with RFP (ECF No. 1-2); and (3) the e-mail from Ms. Kearney to MIM's counsel (ECF No. 1-3). The County does not contest the authenticity of these documents or otherwise object

to them. The court may consider these documents without converting the motion into one for summary judgment.

**III. Analysis**

Section 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts. . . as is enjoyed by white citizens[.]" To state a claim under § 1981, a plaintiff must establish "purposeful, racially discriminatory actions that affect at least one of the contractual aspects listed in § 1981(b)." *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999).

The County argues that MIM's allegations are too conclusory to state a claim. (ECF No. 10-1, at 1-2, 7–19). The County highlights four cases to support its argument: (1) *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582 (4th Cir. 2015); (2) *Coleman v. Md. Court of Appeals*, 626 F.3d 187 (4th Cir. 2010); (3) *Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009); and (4) *Cepada v. Bd. of Educ. of Balt. Cty.*, No. 10-0537-WDQ, 2010 WL 3824221 (D.Md. Sept. 27, 2010). (ECF No. 12, at 4–5). The County argues that each of these cases contained more detailed factual allegations than MIM's complaint

and were nonetheless insufficient to state a race discrimination claim.[3] (*Id.*).

*McCleary-Evans* involved an African American, female plaintiff who alleged that the Maryland Department of Transportation's State Highway Administration "failed or refused to hire her for two positions" because "the decisionmakers [(one of whom was a white male and one of whom was a non-black woman)] were biased and had 'predetermined' that they would select white candidates to fill the positions." 780 F.3d at 583. The United States Court of Appeals for the Fourth Circuit affirmed the district court's dismissal, concluding that the plaintiff "did not allege facts sufficient to claim that the reason [the Highway Administration] failed to hire her was because of her race or sex." *Id.* at 585. The Fourth Circuit noted:

> The allegation that the Highway Administration did not hire her because its decisionmakers were biased is simply too conclusory. Only speculation can fill the gaps in her complaint – speculation as to why two "non-Black candidates" were selected to fill the positions instead of her. While the allegation that non-Black decisionmakers

---

[3] The *Coleman* and *McCleary-Evans* plaintiffs alleged race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*. *Coleman*, 626 F.3d at 189; *McCleary-Evans*, 780 F.3d at 583. The *Cepada* plaintiff alleged race discrimination under both § 1981 and Title VII. No. 10-0537-WDQ, 2010 WL 3824221, at *1. The *Francis* plaintiffs alleged race discrimination under § 1981. 588 F.3d at 190. Title VII case law applies to § 1981 claims. *Gordon v. Holy Cross Hosp. Germantown, Inc.*, 385 F.Supp.3d 472, 477 (D.Md. 2019).

6

> hired non-Black applicants instead of the plaintiff is *consistent* with discrimination, it does not alone support a *reasonable inference* that the decisionmakers were motivated by bias.

*Id.* at 586 (emphasis in original).

*Coleman* involved an African American, male plaintiff who alleged that he was fired because of his race, because he requested sick leave, and because a coworker falsely alleged that he steered contracts to vendors in which he had an interest. 626 F.3d at 189. One of the *Coleman* plaintiff's supervisors was white and the other supervisor's race was not identified. *Id.* The Fourth Circuit affirmed the district court's dismissal, concluding that "although Coleman's complaint conclusorily alleges that Coleman was terminated based on his race, it does not assert facts establishing the plausibility of that allegation." *Id.* at 190-91. The Fourth Circuit concluded that "[a]bsent such support, the complaint's allegations of race discrimination do not rise above speculation." *Id.* at 191.

*Francis* involved the termination of the Baltimore City Police Commissioner and two of his deputies. 588 F.3d at 189. The Commissioner and one of the deputies were both African American and they "alleged that their firings were racially motivated[.]" *Id.* at 190. The Fourth Circuit affirmed the district court's dismissal, noting that the only factual allegations asserted in support of the § 1981 claim were that

7

the Commissioner and his deputy were African American males, the defendants were all white males, and the defendants never treated white members of the Police Department in a similar manner. *Id.* at 195. The Fourth Circuit concluded the "allegations [were] not only conclusory and insufficient. . ., they [were] patently untrue, given that [the second deputy], who [was] not alleged to be within a protected class, complained of the exact same treatment in every other count of the complaint, belying any claim of discriminatory treatment." *Id.*

Finally, *Cepada* involved an African American teacher who alleged that the administration ignored his requests for the reassignment and removal of disorderly students but did not ignore such requests from Caucasian teachers, ignored his concerns about potentially violent students but did not ignore such concerns from Caucasian teachers, and assigned him less favorable teaching schedules than his Caucasian peers. No. 10-0537-WDQ, 2010 WL 3824221, at *1. The district court granted the Board of Education of Baltimore County's motion to dismiss and explained:

> Cepada fails to state a discrimination claim under § 1981. He does not allege that the Board intended to discriminate against him on the basis of race. Simply asserting, for example, that school personnel disregarded Cepada's requests for relocation or removal of boisterous students, yet honored similar requests by his Caucasian colleagues cannot support a claim of intentional

> discrimination. Although such allegations
> suggest that the administration treated
> Cepada in a disparate manner, § 1981 is
> violated only by intentional racial
> discrimination. Because Cepada has not
> [pleaded] facts alleging that the reason for
> his disparate treatment was his race, [the
> § 1981 claim] must be dismissed.

*Id.* at *4.

MIM responds that the County "applied a different, and more favorable, standard" to the non-minority firm. (ECF No. 11, at 2). MIM elaborates that the County declined to award the work to a minority firm due to time constraints but "then hired a non-minority firm to perform the same work. . . without the same time restrictions." (*Id.*, at 4). MIM concludes that these allegations allow for a "clear inference. . . that the time restrictions were not, and could not logically be, the true reason for the [cancellation] of the solicitation, and that the proffered reason was a pretext for discrimination." (*Id.*, at 4-5).

The County is correct that MIM raises conclusory allegations like those deemed insufficient in *McCleary-Evans*, *Coleman*, *Francis*, and *Cepada*. The core of MIM's race discrimination claim is that it is an MBE with an African American majority owner, and the County has a Caucasian majority. MIM does not plead any facts to suggest that the County's decision to cancel the solicitation and use RFP, an on-

9

call vendor, was a purposeful, racially discriminatory action. MIM argues that the County's reason for cancellation – time constraints – is pretextual. This is nothing more than speculation. The County recognized that the work could not "be completed before end of calendar year." (ECF No. 1-1). The County may well have determined that an on-call vendor would be able to complete more of the work within the calendar year than any of the vendors that submitted bids. The County suggests just that in its papers. (ECF No. 10-1, at 18 ("[T]he County acted entirely within its lawful discretion to cancel the solicitation and redirect the work to an on-call vendor to do what it could to expedite completion of at least some of the work before winter weather set in."); ECF No. 12, at 5–6).

One case, *Woods v. City of Greensboro*, 855 F.3d 639 (4th Cir. 2017), warrants brief discussion although neither party cited it. In *Woods*, the Fourth Circuit reversed a district court's dismissal of a § 1981 claim. At issue was the City of Greensboro's decision to grant and then subsequently deny a $300,000 economic development loan to a minority-owned television network. 855 F.3d at 641. The City was willing to grant the loan when it was "fully secured by a second-position lien on the personal residence of the [television network's] principals," but was unwilling to grant the loan after discovering the principals had a home equity line of credit on

10

the property such that the City's interest would be "fully secured by a third-position lien[.]" *Id.*

The television network's allegations included: "(1) the results of a disparity study demonstrating a pattern of the City almost exclusively lending to nonminority-owned businesses; (2) facts which suggest[ed] that the [principals'] residence had sufficient equity [to secure fully] a third-position lien; and (3) examples of how the City has treated nonminority businesses differently, *including taking a third-position lien in approving a loan to a nonminority corporation*." *Woods*, 855 F.3d at 648 (emphasis in original). MIM's general reference to recent internet and print media articles "indicat[ing] perceptions of racial discrimination or intolerance in. . . [the County's] education, public housing, and public services[,]" (ECF No. 1, ¶ 7), does not approximate the context-specific allegations in *Woods*.

Judge Davis concluded the *Woods* majority opinion by noting "that discrimination claims are particularly vulnerable to premature dismissal because civil rights plaintiffs often plead facts that are consistent with both legal and illegal behavior, and civil rights cases are more likely to suffer from information-asymmetry, pre-discovery." 855 F.3d at 652. Nonetheless, the conclusory allegations here are insufficient. The County's motion to dismiss will be granted.

**IV. Conclusion**

For the foregoing reasons, the motion to dismiss filed by the County, (ECF No. 10), will be granted. A separate order will follow.

/s/<br>
DEBORAH K. CHASANOW<br>
United States District Judge